UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTEBAN OCAMPO,<br><br>  Plaintiff,<br><br>  v.<br><br>FRESNO POLICE DEPARTMENT, et al.,<br><br>  Defendants. | No.  1:23-cv-01653-NODJ-EPG<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFF TO:<br><br>(1)  FILE AN AMENDED COMPLAINT; OR<br><br>(2)  NOTIFY THE COURT THAT HE WANTS TO STAND ON HIS COMPLAINT<br><br>(ECF No. 1)<br><br>THIRTY (30) DAY DEADLINE |

Plaintiff Esteban Ocampo proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 3). Plaintiff's complaint alleges that Defendants used excessive force against him and harassed him in connection with a traffic stop.

Upon review, the Court concludes that Plaintiff fails to state any cognizable claims. Plaintiff now has two options on how to proceed: (1) Plaintiff may file an amended complaint, if he believes that additional facts would state cognizable claims, which amended complaint the Court will screen in due course; or (2) he may file a notice stating that he wants to stand on his current complaint and have it reviewed by a district judge, in which case the Court will issue findings and recommendations to the assigned district judge consistent with this order.

## I. SCREENING REQUIREMENT

Because Plaintiff is proceeding *in forma pauperis* (ECF No. 3), the Court screens the complaint under 28 U.S.C. § 1915(e)(2)(B)(i-iii), which directs the Court to dismiss a case at any time if the Court determines that it is frivolous or malicious, fails to state a claim, or seeks relief against an immune defendant.

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff sues five defendants: (1) Fresno Police Department; (2) Paco Balderama, the Fresno Police Department's Chief of Police; (3) Police Officer Jose Sanchez; (4) Sergeant Ramon Ruiz; and (5) Police Officer Davis.[1] Plaintiff alleges that, on August 9, 2023, he was pulled over for having no front plates by Defendants Davis (the driver of the police vehicle) and Sanchez (the passenger in the police vehicle). Sanchez came out with a gun drawn. Soon after Davis saw some type of paperwork,[2] he let Plaintiff go. After parking for a period of time, Sanchez returned and threated to take Plaintiff's car, which Plaintiff had recently purchased. An unknown police offer

---

[1] Minor alterations, such as correctly misspellings and altering capitalization, have been made to some of Plaintiff's quotations without indicating each change.

[2] The complaint appears to reference "911 paperwork." (ECF No. 1, p. 7).

2

passed by in a Durango.

Plaintiff asked for a supervisor, but Sanchez stated, "I don't know why you want me to call my Sergeant, if he is going to do the same." Defendant Ruiz, whom Plaintiff believes was driving the Durango that had passed earlier, showed up and removed Plaintiff from the vehicle and searched him. And Sanchez searched Plaintiff's vehicle. An unknown motorcycle officer showed up and stated that the officer makes all of the officer's "subjects sign the ticket." Ruiz made a fool out of Plaintiff and was "hyping people up to get [him] to sign a document." Sanchez handcuffed Plaintiff "very tightly that [his] wrist gets cut."  Ruiz told Sanchez to add "obstruction," in what appears to be a reference to a criminal charge that Plaintiff received.

Ruiz huddled all the officers and then returned, doubling down on influencing people to get Plaintiff to sign a document. Sanchez handed Plaintiff "to the patrol." Ruiz continued to antagonize Plaintiff and then left. Ruiz returned and yelled at Plaintiff like he was a "kid," stating, "Why don't you want to sign the paper!" Defendant Balderama and his police continue to violate Plaintiff's rights, causing intentional emotional distress.

While in jail, Sanchez kept harassing Plaintiff. He yelled something in front of his coworkers that caused countless inmates to turn and look at Plaintiff, which extended his emotional distress. Plaintiff fears the police and is being terrorized by them.

Plaintiff's complaint describes his purported troubles after the incident in the complaint, including having to quit school, mental health problems, and not seeing his grandmother before she died. Plaintiff seeks approximately $2 million in damages for relief.

On the attached civil cover sheet, Plaintiff states that this case arises under 42 U.S.C. § 1983. Elsewhere in the complaint, Plaintiff states that the following Federal provisions are at issue: 18 U.S.C. §§ 241, 242, 245, which are criminal statutes; the Eighth Amendment; the Fourteenth Amendment; and the Fifth Amendment.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

3

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory

position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B.   Criminal Provisions**

As an initial matter, Plaintiff's claims based on alleged violations of criminal statutes cannot proceed because such violations can only be prosecuted by the government. There is no private claim available based on an officer allegedly violating criminal codes.

Specifically, Plaintiff's complaint alleges claims based on the following criminal statutes: 18 U.S.C. § 241, which concerns conspiracies against a person's Federal rights; 18 U.S.C. § 242, which concerns deprivations of a person's Federal rights under color of law; and 18 U.S.C. § 245, which generally prohibits interference with certain individual activities, including voting, applying for employment, and serving as a juror. But "[t]hese criminal provisions . . . provide no basis for civil liability." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (addressing §§ 241, 242); *see Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2014 WL 4220319, at *3 (N.D. Cal. Aug. 25, 2014) (finding no basis for civil liability under §§ 241, 242, and 245). Rather, "unless a specific statute provides for a private right of action, courts have found that violations of Title 18 are properly brought by the United States government through criminal proceedings and

not by individuals in a civil action." *Banuelos v. Gabler*, No. 1:18-CV-00675-LJO-SAB, 2018 WL 2328221, at *3 (E.D. Cal. May 22, 2018).

Accordingly, Plaintiff cannot state any cognizable claim under the criminal provisions cited in his complaint.

### C. Fresno Police Department not a Proper Defendant

Additionally, Fresno Police Department is not a proper party to this § 1983 action. As one court has observed:

> The Fresno Police Department is not a party that is amenable to suit under section 1983. Although municipalities, such as cities and counties, are amenable to suit under *Monell*, sub-departments or bureaus of municipalities—like the Fresno Police Department—are not generally considered "persons" within the meaning of section 1983.

*Pellum v. Fresno Police Dep't*, No. 1:10-CV-01258-OWW-SKO, 2010 WL 3516346, at *2 (E.D. Cal. Sept. 2, 2010); *see Sanders v. Aranas*, No. 1:06-CV-1574-AWI-SMS, 2008 WL 268972, at *2 (E.D. Cal. Jan. 29, 2008) (collecting cases noting that municipal police departments are not considered "persons" under § 1983).

Thus, Plaintiff's claims against the Fresno Police Department are subject to dismissal.

### D. Supervisory Claims against Police Chief

Moreover, Plaintiff's allegations against Defendant Balderama, the Police Chief of the Fresno Police Department, are insufficient to establish liability for any of Plaintiff's claims. As noted above, supervisory personnel are not liable for the actions of their employees under a theory of respondeat superior; thus, when a defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77. The only allegation against Balderama is that this Defendant has an unidentified "policy" in place to violate Plaintiff's rights. However, beyond this conclusory assertion, Plaintiff fails to identify any policy at issue, describe how it was implemented by Balderama, or explain how it was the moving force behind any constitutional violation. Accordingly, Plaintiff cannot state any claim against Balderama.

### E. Excessive Force

Plaintiff also appears to allege that the officer Defendants used excessive force against him during the traffic stop and arrest.

6

Based on Plaintiff allegations that indicate that he was neither a convicted prisoner nor a federal pretrial detainee at the time of the incidents, the Court concludes that neither the Fifth nor Eighth Amendments are implicated here. *See Williams v. U.S. Marshal Doe #1*, No. 22-CV-0139-BAS-BLM, 2022 WL 17330851, at *2 n.3 (S.D. Cal. Nov. 29, 2022) ("The Eighth Amendment applies to convicted prisoners, while the Fifth Amendment applies to excessive force claims raised by federal pretrial detainees."); *Hernandez v. Metro. Det. Ctr.*, No. 2:20-CV-03869-DSF-JC, 2022 WL 16888509, at *3 n.4 (C.D. Cal. Sept. 28, 2022) ("Because plaintiff sues federal officers, the Fifth Amendment, rather than the Fourteenth Amendment, is the proper basis for any equal protection or due process claim."). Accordingly, Plaintiff cannot state any cognizable claim under these Amendments.

Because the circumstances of the complaint indicate that Plaintiff was ultimately arrested in connection with a traffic stop, the Fourth Amendment[3] provides the relevant standard for his excessive-force claim. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."); *see also Pierce v. Multnomah County, Oregon*, 76 F.3d 1032, 1042 (9th Cir. 1996) (noting that "the Fourth Amendment continues to protect an arrestee during the second custodial stage, post-arrest but pre-arraignment"). Such excessive-force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and internal citations omitted). The Supreme Court has cautioned that this reasonableness inquiry should not be approached mechanically but "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[3] The protections of the Fourth Amendment have been "incorporated in the Fourteenth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 861 (9th Cir. 2005).

1 safety of the officers or others, and whether he is actively resisting arrest or attempting to evade
2 arrest by flight." *Id.* As for the objective component of the inquiry, "the question is whether the
3 officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting
4 them, without regard to their underlying intent or motivation." *Id.* at 397.

In his complaint, Plaintiff states that Sanchez came out with "guns drawn." The Ninth Circuit has concluded that, in certain circumstances, pointing a gun at a suspect can constitute excessive force. *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014 (9th Cir. 2002). However, the Ninth Circuit, citing *Graham*, emphasized that the particular facts of each case were important to determining whether the use of a drawn gun constituted excessive force. *Id.* at 1013-14.

Here, Plaintiff fails to allege facts that, if true, would indicate that approaching Plaintiff with a gun drawn at this traffic stop was excessive and unconstitutional. While Plaintiff indicates that he was pulled over for having no front plates and that Sanchez "came out guns drawn," he does not provide any further facts regarding the stop such as what he or Sanchez said during the stop; whether Sanchez pointed the gun at him; what Plaintiff did during the stop; whether Plaintiff had any weapon; or whether he was compliant with the instructions of officers. Accordingly, the Court cannot conclude that, even if the facts in Plaintiff's complaint are true, the Defendants used excessive force in violation of the Constitution.

Plaintiff also alleges that Sanchez handcuffed him "very tightly [so] that [his] wrist gets cut." "The mere application of handcuffs during the course of an arrest does not, in and of itself, give rise to a section 1983 claim for excessive force. The right to make an arrest carries with it the right to use 'some degree of physical coercion.'" *Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *7 (E.D. Cal. May 7, 2013) (quoting *Graham*, 490 U.S. at 396). "The Ninth Circuit has held that excessively tight handcuffing can constitute a Fourth Amendment violation, but only where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." *Id.* at *8 (citations omitted). However, not any injury will suffice, rather the injury must be unreasonable:

> The Court finds the reasoning in *Ha v. City of Liberty Lake* instructive on this issue. 2010 WL 4065491 (E.D. Wa. Oct. 15, 2010). *Ha* analyzed the Ninth Circuit's rulings on overly-tight handcuffing claims and explained that "*unreasonable* injury to a person's wrists using handcuffs constitutes excessive force," but "handcuffing is not excessively forceful unless supported by factual

8

    allegations detailing specific actions that caused specific injuries in the application of the handcuffs." *Id.* at *6 (emphasis in original). Here, Rocky's only evidence to support his excessive force claim is his testimony that the handcuffs were too tight and caused him a slight abrasion.

*Luong v. City & Cnty. of San Francisco*, No. C11-5661 MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012).

  Plaintiff fails to provide any of the surrounding circumstances of the handcuffing that led to his injuries; moreover, he fails to describe his injury beyond calling it a "cut." Accordingly, even construing all facts alleged in the complaint as true, the Court cannot conclude that excessive force was used.

  **F.**  **Harassment**

  Plaintiff's complaint alleges harassment by Defendants. His allegations mostly center on Ruiz trying to get him to sign a document. He states that Ruiz made a fool out of him and was "hyping people up to get [him] to sign a document." Additionally, Ruiz huddled up with officers and then doubled down on influencing people to get him to sign a document. Ruiz continued to "antagonize" him and yelled at him like he was a "kid," stating, "Why don't you want to sign the paper!"

  While the Ninth Circuit has indicated that "unusually gross" comments may implicate a constitutional claim, *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998), "mere verbal harassment does not give rise to a constitutional violation under section 1983." *Shong-Ching Tong v. City of Pomona*, 97 F.3d 1461 (9th Cir. 1996). Here, Plaintiff has failed to allege any "unusually gross" comments by Ruiz. Rather, his allegations about Ruiz "hyping people up," trying to influence him to sign a document, and talking to him like a "kid" are at most instances of mere verbal harassment that are insufficient to state a § 1983 claim for violating Plaintiff's constitutional rights.

  Plaintiff additionally alleges that Sanchez "kept harassing" him while he was in jail, stating that "he yelled something that cause[d] countless . . . inmates to turn and look at [him]." However, Plaintiff does not identify what Sanchez said, let alone identify unusually gross comments so as to state a potentially actionable claim.

9

The Court notes that the Ninth Circuit has held that certain comments made in front of other inmates that could subject a plaintiff to harm, such as labeling an inmate a snitch, can state a § 1983 claim. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (upholding a failure to protect claim where Plaintiff "alleged that because he had petitioned prison and government officials for redress of his grievances, [Defendants] had conspired to label him a 'snitch' and thereby subject him to retaliation by inmates"). However, beyond stating that Sanchez's comment caused other inmates to look at him, he does not allege that he was put in danger by Sanchez's comment. Additionally, Plaintiff does not allege that any inmate harmed him or threatened to harm him because of Sanchez's comment.

Accordingly, the Court concludes that Plaintiff has failed to state any claim for harassment under the above standards.

### E. Potential *Heck* Bar

Without deciding the issue, the Court notes a possible bar to this lawsuit. In *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The favorable termination rule laid out in *Heck* preserves the rule that claims which, if successful, would necessarily imply the invalidity of a conviction or sentence, must be brought by way of a petition for writ of habeas corpus. *Muhammad v. Close*, 540 U.S. 750-51 (2004).

Here, it is possible that Plaintiff is involved in criminal proceedings related to the arrest discussed in the complaint. If success on Plaintiff's claims would necessarily imply the invalidity of a conviction or sentence, then: (1) the claim must be brought by way of a petition for writ of habeas corpus; and (2) would be subject to the favorable termination rule, which requires the conviction or sentence to have been reversed, expunged, or otherwise invalidated, before Plaintiff could recover damages. Also, if a plaintiff files any "claim related to rulings that will likely be made in a pending or anticipated criminal trial[,] it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007).

**IV.     CONCLUSION AND ORDER**

The Court has screened Plaintiff's complaint and concludes that he fails to state any cognizable claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Thus, the Court will provide Plaintiff with thirty days to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). If Plaintiff chooses to file an amended complaint, the amended complaint must allege violations under the law with the required specificity described above. Plaintiff should note that, although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Additionally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to a district judge consistent with this order.

For the above reasons, IT IS ORDERED that:

1. The Clerk of Court is directed to send Plaintiff a § 1983 civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall either:
   a. File a First Amended Complaint; or
   b. File a notice stating that he wants to stand on his first amended complaint.
3. Should Plaintiff choose to amend his complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:23-cv-01653-NODJ-EPG; and

11

4. Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated: **January 24, 2024**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE